**WO**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br>v.<br>110 FIREARMS,<br><br>    Defendant. | CV-09-243-PHX-MHB<br><br>AMENDED ORDER |

This matter comes before the court upon consideration of Plaintiff's First Motion to Strike Claim and Answer of Thomas Lang (Doc. #18). Claimant Thomas Lang has filed a Response (Doc. #27), and Plaintiff has filed a Reply (Doc. #33). This Court ordered an evidentiary hearing on the sole issue of the standing of Claimant pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA") [1] to contest forfeiture, indicating as follows in its Order:

As set forth in the 2006 Advisory Committee Notes for Rule G(8)(c)(ii):

> Paragraph (c)(ii) further identifies three procedures for addressing claim standing. If a claim fails on its face to show facts that support claim standing, the claim can be dismissed by judgment on the pleadings. If the claim shows facts that would support claim standing, those facts can be tested by a motion for summary judgment. If material facts are disputed, precluding a grant of summary judgment, the court may hold an evidentiary hearing. The evidentiary hearing is held by the court without a jury. The claimant has the burden to establish claim standing at a hearing; procedure on a government summary judgment motion reflects this allocation of the burden.

Advisory Committee Notes to Rule G(8)(c)(ii). (Doc. #39.) The Court found that "the material facts as to claim standing are sufficiently disputed." (Id.)

---

[1] 18 U.S.C. §983.

The evidentiary hearing took place on January 20, 2010. Defendant presented the testimony of one witness, the Claimant Thomas Lang. (Doc. #49.) Plaintiff presented the testimony of the following witnesses: Dennis Kirsner, Don McPhee, and Bureau of Alcohol, Tobacco and Firearms (ATF) agents Carmelo Perez and Clayton Merrill. (Id.) The Court received and admitted Plaintiff's exhibits 1, 2, and 3, and Claimant's exhibits 50, 51, 52, and 53. (Id.) Both Plaintiff and Claimant subsequently filed Proposed Findings of Fact and Conclusions of Law. (Docs. ##56, 57, and 59.) Based upon consideration of all of the above, the Court issues the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. An investigation was commenced on September 24, 2008, by ATF Special Agent Clayton Merrill, into the reported sale on September 10, 2008, of Defendant property, 10 Ruger Ranch Rifles and one-hundred Glock 19 handguns (hereinafter "the firearms") by Saba's Western Wear, a licensed firearms dealer in Chandler, Arizona.

2. The firearms were originally sold by Davidsons, a firearms distributer, on or about September 8, 2008, through Saba's Western Wear. The sale was brokered by Dennis Kirsner, a former employee of Davidsons.

3. Dale Bell had solicited Kirsner to acquire the firearms. Kirsner then contacted Davidsons to obtain a price quote and communicated that quote back to Dale Bell.

4. Kirsner received cash and a check for the purchase of the firearms from Spencer Bell, the son of Dale Bell, and deposited the money into his personal account.

5. On September 8, 2008, Kirsner picked up the firearms from Davidsons and transferred them into his pickup truck. Kirsner paid for the firearms with a cashiers check drawn on his personal account in the amount of $49,597.10. Kirsner advised Donald McPhee, an employee of Davidsons, that he was purchasing the firearms for a friend of his in Queen Creek who was starting a security camp, and that he expected some of the firearms would stay in Queen Creek and some would go to a security camp in South Dakota. Kirsner testified that he believed the firearms were destined for resale through a pawn shop owned by Dale Bell in South Dakota.

2

6. On September 10, 2008, Kirsner, Claimant and Spencer Bell arrived at Saba's Western Wear to complete the transaction.

7. Claimant advised the clerk that he was the purchaser of firearms, provided his drivers license and signed AFT Form 3310.04, indicating he was the "transferree" of the property.

8. The firearms were not delivered to Saba's Western wear and Claimant told the clerk that he already had possession.

9. After the transaction, Claimant left the area without the firearms. Kirsner and Spencer Bell transported the firearms to a casita at the San Tan Flats Restaurant. Spencer Bell opened a gun safe therein and locked the firearms inside.

10. The San Tan Flats Restaurant is owned by Dale Bell, and Spencer Bell works as the manager of the restaurant. Claimant was a long-term patron and employee of the restaurant and through that association became close to the Bell family.

11. On September 25, 2008, at approximately 1:00 p.m. ATF agents Perez and Merrill arrived on Claimant's residential property in Queen Creek, Arizona, to confront Claimant about the purchase of the firearms.

12. Claimant was at home working outside on restoring an old wagon, and cooperated by answering the questions posed by the agents. The agents carried an audio recorder and taped the conversation with Claimant.

13. Claimant advised the agents that he had purchased the firearms for his friend Dale Bell and that Dale Bell had contacted him and told him that Spencer would contact him about using Claimant's drivers license and information. Claimant stated that Dale Bell was purchasing the firearms for the "end of the world" and that Bell was building a compound in South Dakota waiting for "when all hell breaks loose."

14. Claimant advised that his only role in the purchase was to arrive at Saba's Western Wear and complete the necessary paperwork to complete the sale. He never saw the firearms or the money advanced to purchase them. Initially he advised the agents that the firearms were

3

driven up to South Dakota by Dale Bell, and then later advised that Spencer Bell had taken them to either his house or his dad's house.

15. During the meeting with the agents, Claimant made a telephone call to a person who identified himself to agent Merrill as Dale Bell. Bell told agent Merrill that he was in Wyoming and that the firearms were in a safe, and that he was keeping the firearms for Claimant. When agent Merrill informed Bell that Claimant had told him to the contrary that the firearms were purchased for Bell, Bell hung up the phone.

16. At the request of the ATF agents, Claimant agreed to have the firearms delivered to his residence, but needed time to get them because getting them would be "complicated." He agreed to have them brought to his house within twenty-four hours.

17. The meeting lasted approximately 37 minutes. The audio recording reflects that Claimant was articulate in his answers to the agents' questions, and repeatedly denied that he had purchased the firearms for himself, asserting that he had purchased the firearms for Dale Bell.

18. Later the same day, ATF agent Merrill called Claimant to check on the status of the firearms and Claimant responded that he was still working on retrieving them. Claimant suggested the agent call back the next morning. ATF agent Merrill called back the next day and Claimant advised that he would have the firearms at his residence at 1:30 p.m. On September 26, 2008, ATF agents went back to Claimant's residence to retrieve the firearms.

19. ATF agents followed Claimant to a back computer room where ten cardboard boxes containing the firearms were located.

20. Claimant confirmed that the firearms were the ones he had obtained for Dale Bell using his own personal information.

21. Claimant also advised the ATF agents that he picked the firearms up at Dale Bell's residence in Scottsdale, Arizona, and brought them back to his residence.

22. ATF agents then seized the firearms as evidence.

23. On November 10, 2008, Claimant submitted a seized asset claim form for the firearms to ATF.

4

24. The Civil Forfeiture Complaint in this action was filed by the government on February 6, 2009, and alleged an *in rem* action, brought to enforce the provisions of 18 U.S.C. §924(d) for the forfeiture of the firearms, involved in a violation of 18 U.S.C. §924(a)(1)(A), that is a knowing false statement or representation made with respect to information required to be kept in the records of a Federal Firearm Licensee.

25. The firearms are currently in the custody of ATF in Phoenix, Arizona.

26. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and an action for forfeiture under 28 U.S.C. § 1355(a).

27. This Court has *in rem* jurisdiction over the Defendant Property pursuant to the service of an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the Plaintiff has executed upon the Defendant Property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

28. Venue is proper in this District.

29. In Claimant's Responses to Discovery he claimed, contrary to what he had told the ATF agents on September 25, 2008, that the firearms were obtained for himself as a financial investment, and identified Dale Bell as the source of the funds, and that Dale Bell had presented the firearms as a gift. Claimant did not have the funds himself to acquire the firearms.

30. In Claimant's Responses to Discovery he claimed, contrary to what he had previously told the ATF agents, that the firearms were retrieved by him and Spencer Bell on September 26, 2008 from the gun safe at the San Tan Flats Restaurant, and transported by them in Claimant's truck to the computer room at his house. Claimant also indicated that he has a key to the casita where the safe was located and knows the combination to the gunsafe.

31. Claimant also admitted he had no money himself to purchase the firearms, that the money to purchase the firearms was never in his possession, that the money was delivered to the wholesaler by Dennis Kirsner, the same individual who had been asked by Dale Bell to find a deal on firearms, and that after the firearms were seized, Dale Bell provided the funds to retain Claimant's counsel to litigate this forfeiture action.

1    32.    Claimant did not deny telling ATF agents on September 25, 2008, that he had purchased the firearms on behalf of Dale Bell, but had no "personal recollection" of making such a statement.

33.    Claimant has a long-standing close, personal friendship with the Bell Family, particularly Dale Bell, as the result of the association with the San Tan Flats Restaurant. Dale Bell is the owner of the restaurant, and therefore, as an employee, Claimant is financially dependent upon Bell. A banquet room at the restaurant, called the "Tom Lang Room" is named after Claimant.

34.    Claimant is not a licensed firearms dealer and cannot operate a business required to sell a large number of firearms in the event he were required to liquidate the firearms in the future.

## CONCLUSIONS OF LAW

**A.    Summary Judgment**.

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130. There must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1996).

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential

to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986) (Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial.). The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989).

Whether there is a genuine issue of fact for trial depends on the substantive law of the underlying case and the evidentiary burdens that law places on each party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 252-56 (noting that "the judge must view the evidence presented through the prism of the substantive evidentiary burden"). Summary judgment procedures must necessarily be "construed in light of the statutory law of forfeitures, and particularly the procedural requirements set forth therein." United States v. One 56-Foot Motor Yacht Named Tahuna, 702 F.2d 1276, 1281 (9th Cir.1983).

**B.    Standing**.

Standing is a threshold issue on which the claimant bears the burden of proof in civil forfeiture cases. United States v. Real Property Located at 5208 Los Franciscos Way, 385 F.3d 1187, 1191 (9th Cir. 2004). To establish Article III standing, the claimant must demonstrate by a preponderance of the evidence an interest in the property sufficient to satisfy the "case and controversy" requirement. Id.; Sierra Club v. Morton, 405 U.S. 727, 731 (1972) (A claimant must possess a "sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy."). A claimant must show "actual or imminent injury-not

7

hypothetical, conjectural, or abstract injury" in order to establish standing. United States v. Lazarenko, 476 F.3d 642, 649 (9th Cir. 2007).

Establishing ownership of property, without an exercise of "dominion and control over the property is insufficient" to establish standing to challenge a forfeiture. United States v. One Parcel of Land, Known as Lot 111-B, 902 F.2d 1443, 1444 (9th Cir. 1990) (per curiam) (citation omitted). "Due to concerns about 'straw man' transfers, 'naked possession' claims are insufficient to establish standing." United States v. $515,060.42, 152 F.3d 491, 498 (6th Cir. 1998). "When confronted with mere physical possession of property as a basis for standing, we require some explanation or contextual information regarding the claimant's relationship to the seized property." Id. (citing United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1058 (9th Cir. 1994)). Because the danger of false claims in civil forfeiture action is substantial, courts "demand more than conclusory or hearsay allegations of some 'interest' in the forfeited property." United States v. $100,348 in U.S. Currency, 354 F.3d 1110, 1118-1119 (9th Cir. 2004) (citation omitted).

**C. Application of law to facts.**

Claimant has asserted that he is the owner of the firearms. [2/] Plaintiff counters that Claimant's assertion of ownership is without merit and disingenuous, and that therefore Claimant has failed to establish Article III standing. Subsection 983(d)(6)(A) of CAFRA defines "owner" as "a person with an ownership interest in the specific property sought to be forfeited, including a leasehold, lien, mortgage, recorded security interest, or valid assignment of an ownership interest." The sole basis for Claimant's assertion of ownership is his claim in the forfeiture proceedings that the firearms were a gift to him from Dale Bell. Claimant did not call Dale Bell or anyone else as a witness to corroborate his claim. He also did not present any documentary evidence of the gifting. Nor did he describe any personal history or circumstance that would

---

[2/] In Claimant's Memorandum Regarding Conclusions of Law, he argues that the Court should not strike his claim because his Fifth Amendment rights were violated by law enforcement agents. (Doc. #57, at 6.) Although the exclusionary rule may be applicable to civil forfeiture actions, there is no pending motion with respect to this issue. United States v. $181,416.00 in U.S. Currency, 590 F.3d 942, 947 (9th Cir. 2010) (after the government filed a complaint for forfeiture, UMCC filed a motion to suppress).

make his sudden acquisition of 110 firearms understandable or sensible. He did not take possession of the firearms after their purchase, did not handle the purchase money, was not involved in the selection of the quality or number of firearms purchased, and did not possess the capability of selling the firearms, despite his proclamation that the firearms were acquired as an investment. When the ATF agents returned to Claimant's house the day after their initial interview to seize the firearms from Claimant, he told them he had retrieved the weapons from Dale Bell's house.

On the other hand, the evidence strongly suggests that the firearms were purchased by Dale Bell, and that Dale Bell involved Claimant in order to utilize his identification in the purchase. The facts fit this scenario neatly. When ATF agents first interviewed Claimant, this was the story he told. During his evidentiary hearing testimony, Claimant stopped short of admitting that he had lied to the ATF agents, and instead claimed that he is a diabetic and was suffering from low blood sugar at the time of the interview, and was therefore not feeling well and was confused. He also claimed that the ATF agents were loud and abusive, and that he was frightened by the agents. Claimant did not seek medical attention after the interview, and did not produce any medical evidence to support his claim. The Court has carefully reviewed the audio tape of the ATF interview, and has found that there is no indication in the 37 minute audio recording that the ATF agents were loud or abusive, or that Claimant was anything but lucid, articulate, and consistent in his answers to their questions. Furthermore, Claimant maintained his initial story the next day when ATF agents came to his home to seize the firearms. The testimony of Dennis Kirsner also supports Claimant's initial story.

Contrary to what he told the ATF agents, Claimant asserted in the forfeiture proceedings that he had possession of the firearms after they were purchased because they were stored at the San Tan Flats restaurant in a safe to which he had access. If the firearms were accessible to Claimant as he claims, he could have retrieved them for the ATF agents on September 25, 2008. Claimant's story that the firearms were intended as an investment also makes little sense, as he does not possess a license to sell them.

9

The cases cited by the parties are distinguishable factually from this case, in that they address the question of the Claimant's ability to demonstrate a possessory, AND an ownership interest. Compare, United States v. $191,910.00 in U.S. Currency, 16 F.3d at 1058 (claimant was in physical possession of the res, and did not disclaim ownership) and United States v. $148,840.00 in U.S. Currency, 521 F.3d 1268, 1277 (10th Cir. 2008) (claimant was in physical possession of the res and consistently asserted ownership); with, United States v. Vacant Land Located at 10th St. and Challenger Way in Palmdale, Ca., 15 F.3d 128, 130 (9th Cir. 1993) (claimant had legal title, but didn't exercise dominion and control of land, the transfer of title was "without consideration," claimant was merely a "strawman holding nominal title as a subterfuge for a drug trafficker").

In Claimant's case, he was not in possession of the firearms after the purchase, and denied ownership. He never took possession of the firearms he purportedly was given, until the ATF agents directed him to produce the firearms. Even if it were true that the firearms were located at the San Tan Flats Restaurant, because several others had access to the firearms, Claimant did not have "sole possession," or at least not possession that would be considered hostile to any other possessory or ownership right. Claimant also did not assert any right of ownership until November 10, 2008, forty five (45) days after the firearms were seized.

The Court finds that Claimant's assertion of ownership fails on the facts presented. A reasonable juror could not conclude that Claimant has Article III standing, based upon his contradictory, unsupported, and nonsensical claim of ownership in the firearms. Compare United States v. Lot 4, Block 5 of Eaton Acres, 904 F.2d 487 (9th cir. 1990) (Claimant's "bare assertion" of ownership contradicted only by confidential informant) with United States v. $42,500, 283 F.3d 977, 984 (9th Cir. 2002) (finding that a "reasonable person" could not return a verdict in favor of Claimant, based upon her "ever-expanding, contradictory, sophistical, and impenetrable story.") Claimant has not established Article III standing by a preponderance of the evidence, such that he will suffer a constitutional injury if the firearms are not returned to him.

## CONCLUSION

Based upon the above findings of facts and conclusions of law, and upon consideration of the totality of the circumstances presented, Plaintiff has established that the *res* is subject to forfeiture pursuant to 18 U.S.C. § 924(d) which constitutes firearms involved in a violation of 18 U.S.C. § 922(a)(6) and § 924(a)(1)(A). See United States v. Arvizu, 534 U.S. 266, 274-77, 122 S.Ct. 744, 751–52 (2002); United States v. $22,474, 246 F.2d 1212 (9th Cir. 2001); and United States v. $42,500, 283 F.3d 977 (9th Cir. 2002).

**IT IS THEREFORE ORDERED** Plaintiff's Motion to Strike Claim and Answer of Thomas Lang (Doc. #18) is **GRANTED**.

**IT IS FURTHER ORDERED** that judgment of forfeiture shall be entered in favor of plaintiff and the Defendant 110 firearms shall be disposed of according to law.

DATED this 6th day of April, 2010.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge